## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| STEVEN H. GERLICH,<br><br>      Plaintiff,<br><br>v.<br><br>COUNTRYWIDE HOME LOANS, INC.,<br>AMERIQUEST MORTGAGE<br>COMPANY, CITIGROUP, INC., CARRIE<br>EHINGER, JOHN DOE (1-50), MARY<br>ROE (1-50), ABC CORPORATIONS (1-<br>50),<br><br>      Defendants. | Civil Action No. 10-cv-4520 (DWF/LIB) |

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT COUNTRYWIDE HOME LOANS, INC.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Defendant Countrywide Home Loans, Inc. ("Countrywide") respectfully submits this Memorandum of Law in Support of its Motion to Dismiss Plaintiff's Complaint pursuant to Rule 12(b) of the Federal Rules of Civil Procedure.

### INTRODUCTION

On March 10, 2003, Plaintiff Steven H. Gerlich ("Gerlich") and his former spouse, Shelley Chamberlin, closed on a home mortgage loan refinancing with Ameriquest Mortgage Company ("Ameriquest") for their St. Cloud, Minnesota home. Ameriquest later sold the loan and assigned the mortgage and promissory note to Countrywide. Gerlich defaulted on the loan.  Countrywide foreclosed on the mortgage and purchased the property at the Sheriff's sale.  Gerlich failed to exercise his right to redeem or

challenge the foreclosure, and Countrywide became the owner of the property upon the expiration of the six-month redemption period. Eviction proceedings were initiated by Countrywide. In a desperate attempt to stave off eviction, Gerlich filed this lawsuit against Ameriquest, the loan originator, Countrywide, the current owner of the loan, and others unnamed, seeking to invalidate and "unwind" the foreclosure.

Gerlich's Complaint is replete with broad, vague, and conclusory claims directed at all Defendants. It appears, however, that most of Gerlich's claims are based the mistaken notion that Countrywide did not have the power to foreclose the mortgage. This claim, along with the numerous other claims set forth in his Complaint, fail as a matter of law for the following reasons.

First, Countrywide complied fully with Minnesota law when it foreclosed the mortgage, as evidenced by the duly recorded Sheriff's Certificate of Sale, and Gerlich has failed to overcome his burden of showing that the Sheriff's Certificate of Sale was invalid. In addition, Gerlich's claims challenging the foreclosure, initiated only after the expiration of the redemption period, are an untimely and impermissible collateral attack.

Gerlich's claims under the federal Fair Credit Reporting Act and Minnesota Fair Debt Collection Practices Act fail because they do not meet the pleading requirements of Rule 8(a). Similarly, Gerlich's fraudulent misrepresentation claim fails because he has not met Rule 9(b)'s particularity requirement. Gerlich has not plead the existence of a civil conspiracy among Defendants, or a duty owed by Countrywide to Gerlich that was breached. Finally, Gerlich's slander of title claim fails because he no longer owns the property.

## STATEMENT OF FACTS

For purposes of this Motion, Countrywide takes the few factual allegations of the Complaint as true. According to the Complaint, Gerlich obtained a mortgage loan on March 10, 2003 from Ameriquest Mortgage Company ("Ameriquest") in the amount of $98,000 to purchase real property located at 133 18th Avenue North, St. Cloud, Minnesota. (Compl. ¶¶ 16, 18). Gerlich signed a mortgage securing the loan (the "Mortgage") that was recorded on March 24, 2003 in the Office of the County Recorder, Stearns County, Minnesota as Document No. 1050580. (Compl. ¶ 21); Declaration of Michael Patiuk ("Patiuk Decl."), Ex. A. On September 24, 2008, an Assignment of Mortgage from Ameriquest to Countrywide was recorded in the Office of the County Recorder, Stearns County, Minnesota, signed by Carrie Ehinger as Vice President of Ameriquest. ("Mortgage Assignment") (Compl. ¶ 4, Patiuk Decl., Ex. B). Non-judicial foreclosure proceedings were initiated by Countrywide, and the Sheriff's sale took place on January 21, 2010. (Patiuk Decl., Ex. C). Countrywide purchased the Property the Sheriff's sale for $110,386.55. (Compl. ¶¶ 20, 68, Patiuk Decl., Ex. D).[1]

## STANDARD OF REVIEW

A complaint must provide "more than labels and conclusion" or "a formulaic recitation of the elements of a cause of action" *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007). *See Devary v. Countrywide Home Loans, et al.*, 701 F. Supp 2d 1096, 1101 (D. Minn. 2010) (holding that the *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955

---

[1] When ruling on a motion to dismiss, a court may consider "materials that are necessarily embraced by the pleadings" without converting the motion to one for summary judgment. *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999) (cites omitted).

(2007) standard applies to all motions to dismiss for failure to state a claim.)   As the Supreme Court recently held, "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing but conclusions." *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1950 (2009).

When presented with a Rule 12(b)(6) motion to dismiss, a court must determine whether the complaint contains "enough facts to state a claim for relief that is plausible on its fact." *Twombly*, 550 U.S. at 570.  *See also Iqbal*, 129 S. Ct. at 1949 (a complaint "must contain sufficient factual matter, accepted as true, to state a claim for relief that it is plausible on its face").  Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S.Ct. at 1950.  Only a complaint that states a plausible claim for relief may survive a motion to dismiss.  *Id.*  The plausibility standard is not akin to a "probability requirement," but requires "more than a sheer possibility" that a defendant has acted unlawfully.  *Id.* at 1949.  Dismissal is mandatory when a plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

## **ARGUMENT**

### I.   **Gerlich's Claims to Set Aside the Sheriff's Sale Must Be Dismissed as a Matter of Law**

Gerlich's claims seeking to set aside the alleged "illegal" Sheriff's sale (Counts V and VII) fail as a matter of law and must be dismissed for the following reasons.  First, Countrywide complied fully with Minnesota law in foreclosing Gerlich's mortgage, as

evidenced by the Sheriff's Certificate of Sale ("Sheriff's Certificate") recorded with the Stearn's County Recorder's Office.   Second, the Sheriff's Certificate is prima facie evidence that the foreclosure sale was valid, and Gerlich has failed to allege sufficient facts in his Complaint overcoming the presumption that the Sheriff's Certificate is valid. Lastly, because Gerlich failed to redeem the property following the expiration of the redemption period, his claims in this lawsuit are an untimely and impermissible collateral attack.

### A.   *Countrywide Complied with Minnesota Law Regarding Non-Judicial Foreclosures*

Gerlich alleges that "Defendants…failed to comply with Minnesota Statute *[sic]* as such all notices of default and sheriff's sales and such other recordings and actions are void…." (Compl. ¶ 108).   Countrywide, however, followed the letter of the law when foreclosing Gerlich's Mortgage.   Four requirements must be followed under Minn. Stat. §580.02 for an entity seeking to foreclose a mortgage by advertisement: (1) there must be a default in a condition of the mortgage making the power of sale operative, (2) there cannot be an action pending to recover the debt for which the mortgage is secured, (3) the mortgage and all assignments thereof must be recorded, and (4) a Notice of Pendency of Proceeding and Power of Attorney to Foreclose must be recorded, and a notice of foreclosure prevention counseling must be provided to the borrower.   *See* Minn. Stat. §580.02.   Nowhere in §580.02 is it required that Countrywide "offer Plaintiff *[sic]* loan modification or workout plan that would exceed the anticipated recovery through

foreclosure on a net present value basis," as Gerlich alleges in his Complaint. (Compl. ¶ 109).

All of the requirements for foreclosure of Gerlich's Mortgage were met.  The Mortgage was recorded with the Stearn's County Recorder's Office on March 24, 2003 as Document No. 1050580 (Patiuk Decl., Ex. A).  The only assignment of record, from Ameriquest to Countrywide dated September 24, 2008, was recorded on October 6, 2008 with the Stearn's County Recorder's Office as Document No. 1269624. (Patiuk Decl., Ex. B).  A "Notice of Pendency of Proceeding and Power of Attorney to Foreclose Mortgage by Corporation," prepared by Countrywide's foreclosure counsel, Peterson, Fram & Bergman, P.A., was recorded with the Stearn's County Recorder's Office as Document No. 1269625.  (Patiuk Decl., Ex. C).  On October 20, 2008, the notice of foreclosure prevention counseling ("Help for Homeowners in Foreclosure") along with the "Notice of Mortgage Foreclosure Sale," "Foreclosure: Notice to Tenants," and "Homestead Desgnation Notice" were personally served on Gerlich by the Stearns County Sheriff's Office.  (Patiuk Decl., Ex. D, at 14-19.)

Gerlich received notice of the foreclosure sale and the foreclosure prevention notice, and there is no allegation in the Complaint disputing that the first two requirements of the statute were met.  As a result, the foreclosure complied with Minnesota law and should be upheld.

**B.**    ***The Duly Executed and Recorded Sheriff's Certificate of Sale is Prima Facie Evidence that the Foreclosure Sale is Valid***

Under Minn. Stat. § 580.19, a sheriff's certificate of sale is prima facie evidence that all of the legal requirements for a valid mortgage foreclosure have been complied with.  Consistent with the statute, courts have rejected efforts by parties to invalidate a valid mortgage foreclosure when the lender possesses a sheriff's certificate of sale.  *See Stein v. Chase Home Finance, LLC*, Civ. No. 09-1995, 2010 WL 4736828 at *5 (D. Minn. Aug. 13, 2010), *Report and Recommendation Adopted*, 2010 WL 4736233 (D. Minn. Nov. 16, 2010); *Dixon v. Deutche Bank Nat'l Trust Co.*, Civil No. 06-2858, 2008 WL 4151835 at *4 (D. Minn. Sept. 3, 2008).   The fact that Countrywide holds the Sheriff's Certificate of Sale, duly executed and recorded by the Stearns County Sheriff's Office on January 21, 2010, is prima facie evidence that the foreclosure sale for the Property is valid.

**C.**    ***Gerlich Failed to Allege Well-Plead Facts Overcoming the Presumption that the Sheriff's Certificate of Sale is Valid***

Gerlich's Complaint fails to allege facts showing that Countrywide violated any statutory requirement under Minnesota law in foreclosing Gerlich's mortgage.  Instead, Gerlich posits numerous broad, conclusory and sometimes incomprehensible allegations, all of which fail to rebut the presumed validity of the foreclosure.

*1.*    ***Gerlich Lacks the Authority to Dispute the Assignment of Mortgage***

Gerlich's main challenge to the foreclosure appears to based on alleged errors in the chain of mortgage assignments.  In particular, Gerlich challenges the recorded assignment from Ameriquest to Countrywide because the individual who executed the

- 7 -

Mortgage Assignment, Carrie Ehringer, signed the Assignment of Mortgage on behalf of a Vice President of Ameriquest. (Compl. ¶¶ 9, 41). It is entirely proper under the law, however, for an individual to serve as an agent for more than one entity, and nowhere in Gerlich's Complaint does he allege that Ms. Ehinger lacked authority to execute the Assignment of Mortgage on behalf of Ameriquest.

In addition, Gerlich lacks standing to challenge the validity of the Assignment of Mortgage to Countrywide. In order to have standing to bring an action, a party must allege an "injury in fact, or otherwise have a stake in the outcome." *Cochrane v. Tudor Oaks Condo Project*, 529 N.W.2d 429, 433 (Minn. Ct. App. 1995). Although Gerlich alleges implicitly that he would suffer injury as a result of losing his home through foreclosure, he simply fails to allege any "injury in fact" as a result of any alleged mistake in the Mortgage Assignment. Because the assignment causes Gerlich no injury and simply allows Countrywide to foreclose on the Mortgage, Gerlich lacks standing to invalidate the assignment.

Gerlich also lacks standing to challenge the assignment because he was neither a party, nor third-party beneficiary to the assignment. See *Ponchik v. King*, 957 F.2d 608, 609 (8th Cir. 1992) (affirming conclusion that plaintiffs lacked standing to bring suit where plaintiffs where neither parties, nor their-party beneficiaries to the contract at issue). Based on the above, Gerlich does not have standing to challenge the Assignment of Mortgage and his claims must be dismissed.

2.      ***Gerlich has failed to plead facts showing that Countrywide is not
the "Holder in Due Course" of the Note***

In his Complaint, Gerlich claims that Countrywide (and each of the other
Defendants) was not the "holder in due course" of the Promissory Note at the time
foreclosure commenced, and therefore Countrywide was not entitled to initiate
foreclosure proceedings. (Compl. ¶¶ 23, 70, 94). Gerlich's allegations fail as a matter of
law and should be dismissed.

Under Minn. Stat. 336.3-302(a), a holder of an instrument is a "holder in due
course" when:

> "(1) the instrument when issued or negotiated to the holder does not bear
> such apparent evidence of forgery or alteration or is not otherwise so
> irregular or incomplete as to call into question its authenticity; and
>
> (2) the holder took the instrument (i) for value, (ii) in good faith, (iii)
> without notice that the instrument is overdue or has been dishonored or that
> there is an uncured default with respect to payment of another instrument
> issued as part of the same series, (iv) without notice that the instrument
> contains an unauthorized signature or has been altered, (v) without notice of
> any claim to the instrument described in section 336.3-306, and (vi) without
> notice that any party has a defense or claim in recoupment described in
> section 336.3-305(a)."

Minn.Stat. § 336.3-302(a). A holder gives "value" for an instrument when money is
actually paid. *See Stein,* 2010 WL 4736828 at *5 (*citing Menard, Inc. v. King De Son,
Co., Ltd.,* 467 N.W.2d 34, 37 (Minn. Ct. App. 1991)). "An instrument is transferred when
it is delivered by a person other than its issuer for the purpose of giving to the person
receiving delivery the right to enforce the instrument." *Id.*, Minn.Stat. § 336.3-203(a).
"Transfer of an instrument ... vests in the transferee any right of the transferor to enforce
the instrument, including any right as a holder in due course" *Id.*, Minn. Stat. § 336.3-

203(b).

Here, Ameriquest was the original holder in due course because it loaned Gerlich $98,000 in exchange for the Promissory Note, and there is no allegation in the Complaint that the signatures on the Note were forgeries, or otherwise not authentic. Countrywide became the holder of the both the Mortgage and Note by virtue of the Assignment of Mortgage from Ameriquest to Countrywide. The Mortgage Assignment explicitly vests in Countrywide Ameriquest's interest in the Mortgage and the "right and interest in the note and obligation . . . and the debt thereby secured." (Patiuk Decl., Ex. B). Because the assignment has been shown above to be valid, Countrywide was the "holder in due course" of the Note at the time of the foreclosure, and Gerlich's claim that Countrywide was not the "holder in due course" fails. *See, e.g., Stein,* 2010 WL 4736828 at *5.

### D. *Gerlich Failed to Redeem the Property, the Redemption Period Has Expired and Countrywide Holds Fee Title to the Property*

Following a sheriff's sale, a mortgagor may exercise the right of redemption to the property under the method outlined in Minn. Stat. § 580.23. In order to redeem, the mortgagor must 'pay[] the sum of money for which the property was sold at the sheriff's sale, plus interest at the note rate in effect at the time of the sale." Minn. Stat. § 580.23(1)(a). The mortgagor must redeem within six months of the foreclosure sale. *Id.*

The redemption period in this case ended on July 21, 2010 -- six months following the Sheriff's Sale on January 21, 2010 -- without redemption. Gerlich's Complaint is devoid of any allegations suggesting that he even attempted to redeem. "[U]pon expiration of the time for redemption, [a sheriff's certificate] shall operate as a

conveyance to the purchaser or the purchaser's assignee of all right, title, and interest of the mortgagor in and to the premises named therein at the date of such mortgage, without any other conveyance."   Minn. Stat. § 580.12.   "[T]itle to property purchased at a mortgage foreclosure vests upon expiration of the redemption period."   *Farmers & Merchants Bank of Preston v. Junge*, 458 N.W.2d 698, 700 (Minn. Ct. App. 1990). Therefore, because Gerlich failed to redeem within the redemption period, and Countrywide held the Sheriff's Certificate, Countrywide became the fee owner of the Property.

> **E.    *Gerlich's Claims Seeking to Invalidate the Foreclosure Were Filed After the Redemption Period Expired and Must Be Dismissed as an Impermissible Collateral Attack***

Gerlich's claims seeking to invalidate the foreclosure are untimely and must be dismissed because the redemption period has expired.  It is well settled in Minnesota that a mortgagor's challenge to the validity of the foreclosure proceedings after the expiration of the redemption period fails because it constitutes an impermissible collateral attack. *Stein*, 2010 WL 4736828 at *6 (*citing*, *Prior Lake State Bank v. Mahoney*, 216 N.W.2d 681, 682 (Minn. 1974)); *see also*, *Haasken v. Mellgren*, No. C1-94-1524, 1995 WL 81415, at *3 (Minn. Ct. App. Feb. 28, 1995) (challenge to foreclosure must be raised before expiration of redemption period).

Here, Gerlich did not commence this action until November 3, 2010, nearly four months after the expiration of the redemption period.   Gerlich also failed to seek or obtain any relief to toll the redemption period, and his opportunity to challenge the foreclosure therefore closed on July 21, 2010.   As a result, Gerlich's claims in his

Complaint attacking the validity of the foreclosure (Counts V, VI and VII) are impermissible and must be dismissed.  See, e.g., *Stein*, 2010 WL 4736828 at *6.

## II.   The Remaining Counts of Gerlich's Complaint Should be Dismissed as a Matter of Law

### A.   *Gerlich's Claim under the Fair Credit Reporting Act (FCRA) does not meet the pleading requirements of Rule 8(a) and fails as a matter of law.*

Gerlich's claim under the FCRA (Count I) does not meet the basic pleading requirements of Fed. R. Civ. P. 8(a)(2).  Rule 8(a)(2) requires that a complaint contain "a short plain statement of the claim showing that the pleader is entitled to relief."  The United States Supreme Court in *Iqbal* established a two-step approach for courts considering motions to dismiss.  First, the court must "identify [] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth" and disregard those pleadings.  *Iqbal*, 129 S. Ct. at 1950.  Second, the court must look at the remaining, well-pleaded factual allegations, and, assuming their veracity, "determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1950.

Gerlich's FCRA claim fails *Iqbal's* first step because it is not supported by anything "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 1949.  Gerlich alleges that "Defendants wrongfully, improperly, and illegally reported negative information as to the Plaintiffs *[sic]* to one or more Credit Reporting Agencies, resulting in Plaintiffs *[sic]* having negative information on their credit reports and the lowering of the FICO scores." (Compl., ¶ 74), but never identifies what "negative information" was reported by the Defendants, and how the reporting of such "negative

information" was improper.  In short, Gerlich failed to plead any specific instance of conduct by Defendants that violates the FCRA.  The Court should disregard all of Gerlich's allegations because they are precisely the type of "[t]hreadbare recitals of the elements of a cause of action" that not entitled to the presumption of truth.  *Iqbal*, 129 S. Ct. at 1949.  Gerlich is "a plaintiff armed with nothing but conclusions," and his claim therefore fails as a matter of law. *Iqbal*, 129 S. Ct. at 1950.

## B.   *Gerlich's Claim for Fraudulent Misrepresentation Fails.*

Gerlich's Fraudulent Misrepresentation claim (Count II) should be dismissed because Gerlich failed to state his allegations with sufficient particularity to satisfy the requirements of Fed. R. Civ. P. 9(b).  Rule 9(b) applies to fraudulent misrepresentation claims.  See *Peterson-Price v. U.S. Bank Nat. Ass'n* (Civ. No. 09-495 ADM/JSM), 2010 WL 1782188 at *12 (D. Minn. May 4, 2010).  The rule requires a plaintiff alleging fraud to identify "who committed the fraud, exactly how that person committed fraud, or exactly when that person committed fraud."  *DeVary v. Countrywide Home Loans, et al.*, 701 F. Supp. 2d 1096, 1110 (D. Minn. 2006).  "[V]ague and conclusory allegations … do not come close to satisfying Rule 9(b)'s particularity requirement." *Id.*

Gerlich's allegations do not come close to satisfying the heightened pleading requirement of Rule 9(b).  The Complaint merely recites the elements of a fraudulent misrepresentation claim, failing to identify who of the Defendants committed the alleged fraud, what the fraud was, or when it occurred.   In particular, Gerlich alleges in his Complaint that Defendants participated in "fraudulent schemes" and a "securitization scheme" (Compl. ¶14) apparently related to mortgage-backed securities (Compl. ¶¶ 43-

56).   These allegations, however, do not enable the Defendants "to respond and to prepare a defense," *Commercial Prop. Invs., Inc. v. Quality Inns Int'l Inc.*, 61 F.3d 639 644 (8th Cir. 1995), and must be dismissed as a matter of law.

### C.      Gerlich's Claim for Breach of Fiduciary Duty Fails as a Matter of Law.

Gerlich's claim for breach of fiduciary duty (Count III) fails as a matter of law. Under Minnesota law, a bank does not have a fiduciary relationship with its customers. *Klein v. First Edina Nat'l Bank*, 196 N.W. 2d 619, 623 (Minn. 1972) ("when a bank transaction business with a depositor or other customer, it has no special duty to counsel the customer and inform him of every material fact relating to the transaction"); *see also Hurley v. TCF Banking and Savings, F.A.*, 414 N.W.2d 584, 588 (mortgagor has no duty to disclose to mortgagee); *Norwest Bank Hastings v. Clapp*, 394 N.W.2d 176, 179 (Minn. Ct. App. 1986) (no duty to disclose unless a fiduciary relationship exists).

Gerlich's Complaint asserts vague and conclusory allegations, including  that "Defendants, by their actions in contract to provide mortgage loan services and a loan program to Plaintiffs were 'fiduciaries'…" (Compl. ¶. 84) and "Defendants breached their fiduciary duties to Plaintiffs by fraudulently concealing to Plaintiffs the ownership or *[sic]* their mortgage which was contrary to Plaintiff's stated intentions…." (Compl. ¶. 85).  Gerlich, however, failed to sufficiently plead any facts supporting the allegations that Countrywide owed a fiduciary duty to Gerlich, and that it breached any such duty. As result, Gerlich's claim must be dismissed.

**D.      Gerlich's Claim for Civil Conspiracy Fails.**

Gerlich's civil conspiracy claim against Countrywide (Count IV) fails and must be dismissed.  Under Minnesota law, "a conspiracy is a combination of persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means." *Bloom v. Hennepin County*, 783 F. Supp. 418, 446 (D. Minn. 1992); *see also*, *Harding v. Ohio Cas. Inc. Co. of Hamilton*, 41 N.W.2d. 818, 824 (Minn. 1950).  Conspiracy is an "intentional tort" which requires a knowing agreement between alleged co-conspirators. *SICK, Inc. v. Motion Control Corp.*, No. 01-1496, 2003 WL 21448864, *10-11 (D. Minn. Jun. 19, 2003).  "A plaintiff asserting a conspiracy claim, therefore, must allege sufficient facts to suggest a 'meeting of the minds' to participate in unlawful activity among alleged coconspirators." *Beutow v. A.L.S. Enter., Inc.,* 564 F.Supp.2d 1038, 1041 (D. Minn. 2008).  "A plaintiff cannot simply incant the magic words 'conspiracy' or 'agreement' in order to adequately plead a conspiracy claim," *Id. (citing, Twombly*, 127 S.Ct. at 1965), a plaintiff must "plead facts plausibly suggesting an illegal agreement." *Id.* at 1043 (*citing Twombly*, 127 S.Ct. at 1974).

Gerlich's Complaint fails to allege any facts which plausibly support the existence of an unlawful agreement among the Defendants.  Gerlich alleges, in conclusory fashion, a "conspiracy to defraud" (Compl. ¶90), but he does not plead any facts setting forth the details of the alleged unlawful agreement or what role each of the alleged co-conspirators in the alleged conspiracy.  Gerlich simply has failed to sufficiently plead any facts

showing how Countrywide knowingly participated in the alleged "conspiracy to defraud." Gerlich's civil conspiracy claim must be dismissed.

### E.     Gerlich's Claim to "Quiet Title" Should Be Dismissed.

Gerlich's quiet title claim (Count VI) seeks a judicial declaration that title to the Property is vested solely in Gerlich, and Defendants have no legal or equitable right, claim, or interest in the Property.  (Complaint, ¶ 100).  This claim has no legal or factual basis – as explained in Section I, Part D above, Countrywide is the owner of the Property, having purchased the Property at the Sheriff's sale and upon the expiration of the redemption period.   Countrywide's valid interest in the Property is an absolute bar to Gerlich's maintenance of, or recovery under, a claim to quiet title to the foreclosed Property.  As a result, Gerlich's claim should be dismissed.

### F.     Gerlich's "Unfair Debt Collection Practices" Claim Fails.

Gerlich alleges in Count VIII that the Defendants violated Minnesota's Fair Debt Collection Practices Act ("FDCPA") (Compl. ¶112), without citation to a single statutory provision and without pleading any specific instance of conduct by Defendant Countrywide that violates the FDCPA.  The allegation clearly fails to meet the pleading requirements of Rule 8 and should be dismissed.   In addition, Gerlich's claim fails because the FDCPA applies only to a "collection agency" or "collector." See Minn. Stat. § 332.31.  Specifically excluded from the FDCPA are collection activities undertaken by a business other than a collection agency, such as "banks" and "loan or finance companies."  Minn. Stat. § 332.32.  Countrywide is not a "collection agency" as defined under the FDCPA, and therefore Gerlich's claim fails as a matter of law.

### G.      *Gerlich Does Not State a Claim for Slander of Title.*

Gerlich's slander of title claim (Count IX) should be dismissed.  The elements of slander of title are (1) a false statement made concerning real property *owned by the plaintiff*; (2) the false statement was published to others; (3) the false statement was published maliciously; and (4) the false statement concerning title to the Property caused the plaintiff pecuniary loss in the form of special damages.  See *Paidar v. Hughes*, 615 N.W.2d 276, 279-80 (Minn. 2000) (emphasis added).  Gerlich's slander of title claim should be dismissed be has failed to plead anything other than vague, conclusory allegations, and he cannot maintain a slander of title action because he no longer owns the property.

As indicated in Section I, Part D above, Countrywide foreclosed on the mortgage and Countrywide was the purchaser at the Sheriff's sale held on January 21, 2010.   The redemption period expired on July 21, 2010 without redemption.  Because there was no redemption, Gerlich has no title to the Property and such title is vested in Countrywide.

Gerlich fails to state a claim for slander of title because he is incapable of establishing the first element under *Paidar* -- he does not own the Property.  As a result, Count IX of the Complaint must be dismissed.

## CONCLUSION

For the reasons set forth above, Countrywide respectfully asks this Court to dismiss with prejudice all counts of Gerlich's Complaint against Countrywide.

Date:  February 11, 2011

**THOMPSON, COE, COUSINS & IRONS, LLP**

s/ Michael G. Patiuk
Michael G. Patiuk (# 21243X)
Jodee McCallum (# 388067)
The Historic Hamm Building, Suite 510
408 St. Peter Street
St. Paul, Minnesota  55102
Phone: (651) 389-5000
Facsimile: (651) 389-5099
Emails: mpatiuk@thompsoncoe.com
jmccallum@thompsoncoe.com

***ATTORNEYS FOR DEFENDANT
COUNTRYWIDE HOME LOANS, INC.***